UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HOPE V. WILSON o/b/o B.D.W.,

                   Plaintiff,                              Case # 19-CV-749-FPG

v.                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

## INTRODUCTION

Hope V. Wilson ("Plaintiff") brings this action on behalf of her minor daughter ("B.D.W.") pursuant to Title XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied her application for Supplemental Security Income ("SSI"). ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 1383(c).

On August 26, 2015, Plaintiff applied for SSI with the Social Security Administration ("the SSA") on B.D.W's behalf. Tr.[1] 15. She alleged that B.D.W. had been disabled since September 1, 2006. Tr. 15. Plaintiff amended the alleged onset date of disability to a closed period from August 26, 2015 to November 9, 2017. Tr. 15. The claim was initially denied, Tr. 68, and on February 5, 2018, B.D.W. and Plaintiff testified at a hearing before Administrative Law Judge Benjamin Chaykin ("the ALJ"). Tr. 34-57. On July 3, 2018, the ALJ issued a decision finding that B.D.W. was not disabled. Tr. 15-29. On April 10, 2019, the Appeals Council denied B.D.W.'s request for review. Tr. 1-5. This action seeks review of the Commissioner's final decision. ECF No. 1.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 12.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 15, 16. For the reasons that follow, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.  The matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (other citation omitted).  The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Child Disability Standard

An individual under 18 years old will be considered disabled if she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924.  At step one, the ALJ determines whether the child is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.924(b).  If so, the child is not disabled.  If

not, the ALJ proceeds to step two and determines whether the child has an impairment, or combination of impairments, that is "severe," meaning that it causes "more than minimal functional limitations."  20 C.F.R. § 416.924(c).  If the child does not have a severe impairment or combination of impairments, she is "not disabled."  If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 416.924(d).  To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To "functionally equal the listings," the child's impairment(s) must cause "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

## DISCUSSION

### I.      The ALJ's Decision

At step one, the ALJ found that B.D.W. had not engaged in substantial gainful work activity.  Tr. 18.  At step two, the ALJ found that B.D.W. has the following severe impairments: attention deficit disorder ("ADHD"), mood disorder, impulse control disorder, oppositional defiant disorder ("ODD"), and conduct disorder.  Tr. 18.

The ALJ made the following findings with respect to the six functional domains: no limitation in acquiring and using information, Tr. 23-24; less than marked limitation in attending to and completing tasks, Tr. 24-25; less than marked limitation in interacting and relating with

others, Tr. 25-26; no limitation in moving about and manipulating objects, Tr. 26-27; marked limitation in caring for yourself, Tr. 27-28; and a less than marked limitation in health and physical well-being, Tr. 28-29.  Because the ALJ did not find B.D.W. to have a "marked" limitation in two domains or an "extreme" limitation in one domain, he concluded that B.D.W. was not disabled. Tr. 29.

## II.    Analysis

Plaintiff advances several related arguments why the ALJ's decision is not supported by substantial evidence, all of which can be boiled down to the following: (1) the ALJ's determination that B.D.W. suffered from a less than marked limitation in the domain of interacting and relating to others during the closed period was not supported by substantial evidence, ECF No. 15-1 at 16-26, and (2) the ALJ's determination that B.D.W. suffered from no limitation in the domain of acquiring and using information is not supported by substantial evidence, *id.* at 26-28.  Because the Court agrees with Plaintiff on the first argument, it will not address the other.

When determining a claimant's function in the interacting and relating with others domain, the Commissioner must "consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). By age twelve, "you should be able to develop more lasting friendships with children who are your age," "be well able to talk to people of all ages, to share ideas, tell stories," and "speak in a manner that both familiar and unfamiliar listeners readily understand." *Id.* § 416.926a(i)(2)(iv).  By adolescence, "you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups," "be able to intelligibly express your feelings, ask for assistance in getting your

4

needs met, seek information, describe events, and tell stories." *Id.* § 416.926a(i)(2)(v). Some examples of limitations a claimant might exhibit in this area include "hav[ing] no close friends," being "overly anxious or fearful of meeting new people," and "hav[ing] difficulty communicating with others; e.g. in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance." *Id.* § 416.926a(i)(3)(ii)-(v); *see also Dunaway ex rel. E.B. v. Colvin*, No. 14-CV-6301P, 2015 WL 5712297, at *13-14 (W.D.N.Y. Sept. 29, 2015).

The ALJ's conclusion that B.D.W. has less than a marked limitation in interacting and relating with others is not supported by substantial evidence for two reasons. First, the records the ALJ cited to support his conclusion are selective and are not representative of the tenor of the cited records; they and do not tell the full story of B.D.W.'s limitations. A closer look reveals a disturbed child who struggled to connect with others. Second, the ALJ used B.D.W.'s improvement following her eight-month stay at Villa of Hope—a residential facility for troubled youth—as evidence that B.D.W. did not have a marked limitation in interacting and relating with others, while ignoring the possibility that B.D.W. had more significant limitations prior to and during her stay at Villa of Hope.

With respect to the first point, as evidence that B.D.W. had only a less than marked limitation in interacting and relating with others, the ALJ cited several reports from before and during B.D.W.'s time at Villa of Hope that appear to show that B.D.W. was not significantly impaired in this domain. However, the records themselves paint a more complicated picture. For example, the ALJ cited consultative evaluator Christine Ransom, Ph.D.'s opinion from December 4, 2015—which he gave "some weight," Tr. 23—for the proposition that B.D.W. had "clear speech and adequate expressive and receptive language skills." Tr. 26. That finding goes to B.D.W.'s capacity to communicate, not necessarily her ability to effectively communicate and thereby to

Case 1:19-cv-00749-FPG   Document 20   Filed 08/17/20   Page 6 of 10

interact and relate with others.  Still, in other areas of the opinion, Dr. Ransom notes that B.D.W. "has a difficult time getting along with peers due to mood swings" and opines that B.D.W. would have a "moderate difficulty" with "interact[ing] adequately with peers and adults due to unspecified mood disorder currently moderate."  Tr. 380.  The ALJ also leaves out Dr. Ransom's indication that "[t]he results of the evaluation are consistent with moderate psychiatric condition which will significantly interfere with the claimant's ability to function on a daily basis."[2]  Tr. 381.

The ALJ also cited a psychological evaluation from Candace Sorensen, Ph.D., completed on September 28, 2016, while B.D.W. was living at Villa of Hope, and which the ALJ gave "some weight."  Tr. 23.  The ALJ correctly noted that these records indicate that B.D.W. was treated at Villa of Hope from April 2016 to December 2016 after multiple problems at home and school, including truancy and running away from home.  Tr. 26.  But Dr. Sorensen's evaluation is a trove of additional illuminating information, none of which the ALJ addresses.  For example, the evaluation indicates that B.D.W. was easily controlled by a female peer, "leading to concern about her ability to keep her own voice in a relationship."  Tr. 506.  When the peer was discharged, B.D.W. became depressed and ran away twice in an effort to reconnect with the peer.  The report goes on to note that B.D.W. "struggle[s] when given directives with which she does not agree," "can be very inflexible," "appears to want attention from adults but struggles to know how to obtain it in a positive manner and frequently acts out."  Tr. 506.  B.D.W. often becomes angry and cannot control her emotions, leading her to sometimes engage in property destruction.  Tr. 506-07.  She "frequently refuses to meet or talk with her clinician" and has "voiced homicidal ideation."  Tr. 506.  While still living at home, B.D.W. attempted to harm her mother's dog, explaining that she was angry with her mother and "wanted to see the dog injured."  Tr. 507.  "[S]he did not

---

[2] The ALJ faults this part of the opinion because the use of the word "moderate" is "somewhat vague.  Tr. 23.

express remorse for her actions," noting that "'[i]t needed to happen.'"  Tr. 507.  Dr. Sorensen concluded that, while B.D.W. can be funny and engaging, her evaluation "indicated that she struggles to identify or understand her own emotions as well as the emotional responses of others, and this significantly impacts her ability to understand herself and her motivations as well as her ability to take in or appreciate others' perspectives."  Tr. 511.  She is confused about how to navigate relationships and struggles to express her emotional needs, especially when encountering difficulties and challenges.  Tr. 511.

The ALJ ignored these characterizations of B.D.W.'s limitations in interacting and relating with others in favor of cherry-picked statements from those same records that, taken out of context, appear to tell a different story.  The ALJ's incorporation of only the statements from these records that supported his opinion, while ignoring the others, was error.  *See Younes v. Colvin*, No. 14-cv-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently"); *Phelps v. Colvin*, No. 12–CV–976S, 2014 WL 122189, *4 (W.D.N.Y. Jan. 13, 2014) ("The selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and brackets omitted); *Caternolo v. Astrue*, No. 6:11–CV–6601(MAT), 2013 WL 1819264, *9 (W.D.N.Y. Apr. 29, 2013) ("[I]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination") (internal quotations omitted) (collecting cases).

The ALJ also erroneously cited records establishing that B.D.W.'s conditions had improved *after* her stay at Villa of Hope as evidence that she had a less than marked limitation in

her ability to interact and relate with others, while overlooking the possibility that B.D.W. had a marked limitation in her ability to interact with others at some point *before* and *during* her time at Villa of Hope.

Among other things, a "disability" under the Act requires an impairment that "lasted or must be expected to last for a continuous period of at least 12 months." 42 U.S.C. § 416.909. "A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status." *Carbone v. Astrue*, No. 08-CV-2376, 2010 WL 3398960, at *13 n.12 (E.D.N.Y. Aug. 26, 2010) (internal quotation marks omitted). "[I]f a claimant is disabled at *any point* in time, the ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for *any* closed, continuous period of not less than 12 months, following the date of his claim." *Williams v. Colvin*, No. 15-CV-155S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016) (emphasis added). In other words, it is necessary "to consider *every* period during which Plaintiff may have been disabled." *Pena v. Barnhart*, No. 01 CIV. 502 (BSJDF), 2002 WL 31487903, at *11 (S.D.N.Y. Oct. 29, 2002) (emphasis added). This is especially true "where the record shows that plaintiff's condition has improved significantly over time as the result of a discrete event." *Robertson v. Berryhill*, No. 6:16-CV-06481 (MAT), 2017 WL 3574626, at *2 (W.D.N.Y. Aug. 18, 2017) (referring to surgery).

To be sure, Plaintiff requested, and the ALJ evaluated, a closed period of disability from August 26, 2015 to November 9, 2017, the date of B.D.W.'s report card showing improvement following her time at Villa of Hope. But the ALJ cited records from Villa of Hope in January 2017 that indicated that her condition had improved, Tr. 201, as evidence that she did not have a marked

limitation in interacting and relating with others during the *entire* closed period.[3]  This finding ignores the possibility that B.D.W.'s limitations with respect to interacting with others had been marked for a period of at least 12 months at any point prior to her discharge from Villa of Hope, even if she had improved by November 9, 2017.  In other words, while Plaintiff concedes that B.D.W.'s functioning improved after Villa of Hope, the ALJ's reliance on her improvement by November 9, 2017, leaves open the possibility that she could have had a marked limitation in the interacting and relating domain before that.  This is especially true in light of the records described above from *before* B.D.W.'s time at Villa of Hope, indicating that she had significant problems in this domain.  Indeed, the ALJ's acknowledgement that B.D.W.'s functioning had "improved" after her stay at Villa of Hope, Tr. 26, suggests that B.D.W.'s condition was worse at some point before that; how much worse is unclear from the ALJ's analysis.  Because it is unclear whether the ALJ properly evaluated B.D.W.'s limitations in the domain of interacting and relating to others for any 12-month time before November 9, 2017, the error is not harmless, and remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 15, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 16, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

---

[3] It is worth noting that, despite being used to support less than a marked limitation after B.D.W. left Villa of Hope, the evaluation indicates that B.D.W. has several "obvious" problems interacting and relating with others on a daily basis.  Tr. 201.

IT IS SO ORDERED.

Dated: August 17, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court